UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE EVANS | Civil Action No. 2:05-CV-183 (FSH) |
| Plaintiff, | **OPINION** |
| vs. | June 26, 2006 |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

**HOCHBERG, District Judge.**

This matter is before the Court upon Plaintiff's motion to review a final determination of the Administrative Law Judge ("ALJ"), pursuant to 42 U.S.C. § 1383(c)(3). The motion has been decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I.     Background**

Plaintiff, George Evans, alleges that he suffered from chronic back pain, which rendered him disabled from November 1, 1996 through June 30, 2002. To be eligible for Disability Insurance Benefits, Plaintiff must demonstrate that he was disabled on or before December 31, 2001, the date through which he remained insured. Plaintiff was born on March 14, 1950 and was educated through the eleventh grade. He has held several jobs, including work as a packer and security guard.

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income Benefits on March 22, 2001. Both claims were denied initially and upon reconsideration. Upon

1

Plaintiff's request, a hearing was held on July 9, 2002 before Administrative Law Judge ("ALJ") Joel H. Friedman, who issued a decision on October 25, 2002. The ALJ found that Plaintiff was disabled as of July 1, 2002, but denied Plaintiff's claim from November 1, 1996 through June 30, 2002, reasoning that Plaintiff could perform his past relevant work during that time period. The decision became final on December 14, 2004, upon the Appeals Council's denial of Plaintiff's request for review.

## II.      Standard for Finding of Disability

An individual may be entitled to Social Security Benefits upon a finding of disability demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A disabling impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D). An individual will be deemed to be disabled only if the impairment is so severe that he is not only unable to do his previous work, but cannot, considering his "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner of Social Security ("Commissioner") uses the following five-step analysis to determine whether an individual is disabled:

   <u>Substantial Gainful Activity</u>. The Commissioner first considers whether the individual is

currently engaged in substantial gainful activity. If there is such activity, the individual will be found not disabled without consideration of his medical condition. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

Severe Impairment. If there is no substantial gainful activity, Plaintiff must then demonstrate that he suffers from a severe impairment or combination of impairments that significantly limits his ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c)) and 416.920(c)).

Listed Impairment. If Plaintiff demonstrates a severe impairment, the Commissioner will then determine whether the impairment is listed in the regulations set forth at 20 C.F.R. § 404, Subpart P or is equal to a Listed Impairment. If the individual has such an impairment, the Commissioner will find the individual disabled.

Past Work. If the individual does not have a listed impairment, the fourth step is to determine whether, despite his impairment, the individual has the residual functional capacity to perform his past relevant work. Residual functional capacity is defined as what the claimant can still do despite his limitations. 20 C.F.R. §§ 404.1545(a) and 416.945(a). If he does have the capacity to perform past work, the individual will be found not disabled. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

Other Work. Finally, if the individual is unable to perform work done in the past, the Commissioner then considers the individual's residual functional capacity, age, education, and past work experience to determine if he can do any other work. If he cannot perform other work, the individual will be found disabled. 20 C.F.R. §§404.1520(g) and 416.920(g).

The five-step analysis to determine whether an individual is disabled involves shifting

burdens of proof.  *Wallace v. Sec'y of Health and Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of production and persuasion through the first four steps; however, if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the individual is capable of performing gainful employment other than the claimant's past relevant work and that jobs which the plaintiff can perform exist in substantial numbers in the national economy.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).  If there is a finding of disability or non-disability at any point during the review, the Commissioner will not review the claim further.  20 C.F.R. §§ 404.1520(a) and 416.920(a).

**III.    Standard of Review**

In accordance with 42 U.S.C. § 405(g), this Court must review the factual findings of the ALJ to determine whether the administrative record contains substantial evidence for such findings.  *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  A decision concerning disability benefits must be upheld by the Court if an examination of the record reveals substantial evidence supporting the ALJ's conclusion.  42 U.S.C. § 405(g).  Substantial evidence is more than a mere scintilla of evidence; "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Where evidence in the record is susceptible to more than one rational interpretation, the Court must endorse the Commissioner's conclusion.  *Alexander v. Shalala*, 927 F. Supp. 785, 791 (D.N.J. 1995), *aff'd*, 85 F.3d 611 (3d Cir. 1996) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).  "The ALJ's responsibility is to analyze all evidence and to provide adequate explanations when

disregarding portions of it." *Snee v. Sec'y of Health and Human Servs.*, 660 F. Supp. 736, 739 (D.N.J. 1987) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *Dobrowolski v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Gober v. Mathews*, 574 F.2d 772, 776 (3d Cir. 1978).

**IV.    Analysis**

The ALJ determined that Plaintiff had not participated in substantial gainful activity since July 1, 2002 (step one); that the medical evidence suggested that Plaintiff has a lower back disorder and chronic obstructive pulmonary disease, which are severe impairments (step two); that these impairments do not meet the criteria of any of the listed impairments described in the Regulations (step three); that prior to July 1, 2002 Plaintiff had the residual functional capacity to perform light work and could perform his past relevant work, but as of July 1, 2002, Plaintiff retained the residual functional capacity to perform only sedentary work and could not perform his past relevant work (step four); and based on Plaintiff's capacity to perform sedentary work, as well as consideration of his age, education, and work experience, a finding of disability is proper as of July 1, 2002 but not prior thereto (step five).

Plaintiff makes four arguments in support of reversal or remand of the ALJ's decision to deny Plaintiff social security benefits: (1) the ALJ's analysis at step three was not supported by substantial evidence; (2) the ALJ erred as a matter of law in assessing Plaintiff's credibility prior to July 1, 2002; (3) the ALJ's step four analysis was not based on substantial evidence; and (4) the ALJ erred in determining the onset date of Plaintiff's disability.

A. The ALJ's decision

Despite Plaintiff's allegations of inability to perform his past jobs as a packer and security

guard from November 1, 1996 through June 30, 2002, the ALJ determined that Plaintiff had the residual functional capacity to perform his past relevant work during that period. The ALJ considered the (a) medical records from Newark Beth Israel Medical Center; (b) medical reports of Dr. Anthony Cincotta; (c) medical reports of Dr. Krish; (d) medical report of Dr. Harry Maroulakos; (e) medical report of Dr. John Sawicki; (f) medical report of Dr. Ana Komotar; and the (g) medical report of Dr. Shamji Shah.

  The ALJ concluded that as of July 1, 2002, the Plaintiff had impairments which made it impossible "to make an adjustment to any work which exists in significant numbers in the national economy," but prior to that date, the Plaintiff was able to perform his past relevant work. Specifically, the ALJ found that the Plaintiff's complaints of disabling pain and pulmonary problems were supported by objective medical evidence as of July 1, 2002, rendering him disabled as of that date, but not prior thereto. The ALJ added that while Plaintiff had received chiropractic treatment as early as May 1995, Dr. Maroulakos found that Plaintiff's condition had markedly improved and he was able to return to work by September 1995. The ALJ also noted that there was a surprising lack of medical treatment from November 1997, when the Plaintiff had been in a motor vehicle accident, until his hospitalization for a pulmonary condition in March 2001.

  The ALJ noted that while the Plaintiff alleged disabling back pain during the period in question, Dr. Krish's report from February 1998 indicates that "physical therapy had improved his back and neck symptoms to the extent that the . . . [Plaintiff] had discontinued physical therapy after only seven treatments . . . ." The ALJ added that "[t]he medical records for this time period d[id] not fully support [Plaintiff's] complaints to the debilitating extent asserted."

The ALJ found that there "[was] not a single instance of any treating physician indicating any incapacity for work activity." The ALJ also noted that the Plaintiff returned to Dr. Maroulakos for treatment only one week prior to his hearing, and that while Dr. Maroulakos reported that the Plaintiff was disabled and unable to work, his opinion was "not supported by any objective findings and deserve[d] little weight."

The ALJ found that before July 1, 2002, the Plaintiff had the residual functional capacity to perform light work, "including lifting and carrying objects weighing up to 20 pounds occasionally, and ten pounds frequently, as well as standing/walking up to six hours per eight-hour workday." He also found Plaintiff able to return to his past relevant work. However, the ALJ found that from July 1, 2002, the Plaintiff's residual functional capacity was restricted to sedentary work and he was unable to return to past relevant work.

The ALJ noted that the Plaintiff "has a limited education and has an unskilled work background," and since he is restricted to sedentary work, a finding of disability is appropriate as of July 1, 2002, but not prior thereto. The ALJ also concluded that because the Plaintiff was not insured on July 1, 2002, he "[did] not meet the threshold requirements for Title II purposes," resulting in a denial of his application.

### B. Review of the ALJ's Decision

The Plaintiff argues that the ALJ did not have substantial evidence at step three of his analysis to find that Plaintiff's impairments did not meet or equal a qualifying impairment. However, Plaintiff bears the burden of production and persuasion at step three of the analysis, and he has failed to meet that burden. *Yuckert,* 482 U.S. at 146 n.5; *Ferguson*, 765 F.2d at 37. The ALJ based his decision on the lack of medical evidence indicating that Plaintiff's

7

impairment was equivalent in severity to any of the criteria of any listed impairment. The ALJ also gave "[p]articular scrutiny" to Plaintiff's "conditions in light of listings 1.00 and 3.00, pertaining to the musculoskeletal and respiratory systems. . . ." It is clear from the record that the ALJ examined all of the medical evidence in drawing the conclusion that Plaintiff's impairments did not meet the appropriate standards. While such evidence may be open to more than one reasonable interpretation, the ALJ does have a substantial basis for the findings made.

The Plaintiff's second argument is that the ALJ erred as a matter of law in his assessment of Plaintiff's credibility. It is within the ALJ's discretion "to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J 1988). The ALJ considered Plaintiff's allegations in light of the medical evidence in the record and concluded that "the claimant's allegations of disability on the basis of low back pain cannot be found to be wholly credible due to the lack of objective medical evidence . . . or any pathology which would prevent the claimant from basic work activities." Additionally, upon examination of the entire record, the ALJ determined that "[t]he medical records from this time period do not fully support [Plaintiff's] complaints to the debilitating extent asserted." In making the credibility determination, the ALJ also considered (a) that there was a lack of medical treatment from November 1997 until Plaintiff's hospitalization in March 2001; (b) emergency room records from November 1997 indicating that Plaintiff was employed, despite his claim that he has been unable to work since November 1996;[1] (c) that Plaintiff only took over-the-counter medication for pain treatment. In light of this and other evidence, the ALJ

---

[1] Emergency Room records from St. James Hospital dated 11/5/97

properly concluded that Plaintiff's allegations were not wholly credible.

The Plaintiff next argues that the ALJ's step four analysis was not supported by substantial evidence. Step four requires the ALJ to determine whether Plaintiff can return to his past relevant work given his medical diagnosis. Although Dr. Maroulakos, a chiropractor, found that Plaintiff was disabled and unable to work, "it is within the ALJ's discretion to weigh the medical assessments and to resolve the conflict accordingly." *Richardson v. Perales*, 402 U.S. 389, 399 (1971). It was within the ALJ's discretion to find that Dr. Maroulakos's opinions were not supported by the objective findings and to give such assessments appropriate weight.

The ALJ considered the totality of the record in determining Plaintiff's ability to return to past work. The record includes evidence that (a) in February of 1998, Dr. Krish's report noted that Plaintiff's condition had improved to such an extent that he no longer attended physical therapy, and also indicated that Plaintiff had normal sensory and motor function; (b) while Dr. Cincotta mentioned that Plaintiff had a history of lower back pain, x-rays of the lumbar spine were normal; (c) no medical experts noted an incapacity for work activity, aside from the opinion of Dr. Maroulakos; (d) not until Dr. Sawicki's examination of Plaintiff in August 2002 was evidence of disability present, including low back pain with decreased range of motion and slow gait. Based on the entire record, the ALJ had substantial evidence to determine that Plaintiff was able to return to his past relevant work prior to the condition noted in August, 2002. Furthermore, the ALJ was proper in his consideration of the medical reports of several doctors, and was free to choose among those medical opinions. *Gober v. Mathews*, 574 F.2d. 772, 777 (3d Cir. 1978) (holding that the ALJ may "choose between properly submitted medical opinions").

The Plaintiff's final argument is that the ALJ erred in the determination of the onset of Plaintiff's disability. The ALJ's determination of the onset date of the disability is subject to the substantial evidence standard. *Lynch v. Barnhart*, 44 Fed. Appx. 589, 590 (3d Cir. 2002). It is often necessary to "infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. . . ." *Mendes v. Barnhart*, 105 Fed. Appx. 347, 350 (3d Cir. 2004) (quoting Social Security Ruling 83-20). Additionally, "[u]nder SSR 83-20, an ALJ should consider three factors in determining an onset date: (1) the claimant's allegations; (2) the claimant's work history; and (3) medical and other evidence." *Beasich v. Comm'r of Soc. Sec.*, 66 Fed. Appx. 419, 432 (3d Cir. 2003).

The ALJ had substantial evidence to conclude that Plaintiff's disability onset date was July 1, 2002 but not prior thereto. The ALJ considered the Plaintiff's testimony as to the alleged onset date, but was presented with inconsistencies.[2] The ALJ also analyzed the medical evidence and pointed to the scarcity of medical treatment between November 1997 through March 2001. The ALJ noted that after the Plaintiff underwent pulmonary surgery on March 28, 2001, the Plaintiff's surgeon, Dr. H. Shah, indicated in a follow-up report dated July 23, 2001 that tests revealed normal spirometry, lung volume and diffusion capacity. The ALJ also noted that Dr. Cincotta, a consultive examiner, found in June 2001 that the Plaintiff's lungs were clear, with no rhonchi, wheezing or rales. In addition, the record reflects that the Plaintiff did not seek treatment for low back pain until on or about July 1, 2002, when he revisited Dr. Maroulakos. Further, the ALJ noted that "there [was] not a single instance of any treating physician indicating any incapacity for work activity" until Dr. Sawicki's medical examination in August 2002.

---

[2] *See supra* note 1 and accompanying text.

Based on the foregoing, the ALJ had substantial evidence with which to draw a conclusion as to the onset of Plaintiff's disability.

In reviewing the ALJ's opinion, the parties' briefs, and the evidence in the record, this Court determines that the ALJ had substantial evidence for his determination that Plaintiff was disabled as of July 1, 2002, but not prior thereto. The mere fact that a different conclusion could have been reached based on the evidence in the record does not undermine the ALJ's decision, as long as substantial evidence exists for that decision. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *LaCorte*, 678 F. Supp. at 84 (citing *Blalock v. Richardson,* 483 F.d 773), 775 (4th Cir. 1972); *Hawkins for Reilly v. Heckler*, 631 F. Supp. 711, 716 (D.N.J. 1985)).

## V.     Conclusion

For the reasons stated in this Opinion, the ALJ's decision is supported by substantial evidence in the record and is affirmed. An appropriate order affirming the decision will issue.


                                                            /s/ Faith S. Hochberg
                                                            Hon. Faith S. Hochberg, U.S.D.J.